

**FILED**
U. S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JUN 2 3 2021

JAMES W. McCORMACK, CLERK
By:_____
DEP CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
(NORTHERN DIVISION)

| | |
|---|---|
| BRANDI COLEMAN; TIFFANY NEAL; FELICIA DYKES; DOMINICK GROSSI; GALENA GUTIERREZ; ANTHONY HARRISON; VITO SCAROLA; MELISSA DINOVI; and BAYLEE SCHAEFER, <br><br> *Plaintiffs,* <br><br> vs. <br><br> WALMART, INC., <br><br> *Defendant.* | No. 3:21-cv-115-JM <br><br> <u>CLASS ACTION COMPLAINT</u> <br><br> Demand for Jury Trial <br><br> Hon. <br><br> DATE: <br> TIME: <br> COURTROOM: <br><br> This case assigned to District Judge Moody <br> and to Magistrate Judge Volpe |

Plaintiffs Brandi Coleman, Tiffany Neal, Felicia Dykes, Dominick Grossi, Galena Gutierrez, Anthony Harrison, Vito Scarola, Melissa DiNovi, and Baylee Schaefer (collectively "Plaintiffs"), on behalf of themselves and the Class and Subclasses of all others similarly situated defined below, bring this complaint against defendant Walmart, Inc. ("Defendant" or "Walmart") for its negligent, reckless, and/or intentional practice of misrepresenting and failing to fully disclose the heavy metals, toxins or other ingredients that do not conform to the labels, packaging, or advertising of, or statements concerning, Defendant Walmart's baby food products sold throughout the United States, including in this District. Plaintiffs seek both injunctive relief and damages on behalf of the proposed Class and Subclasses (as defined below) and allege the following based on (a) personal knowledge, (b) the investigation of counsel, and (c) information and belief. Given the concealed nature of Defendant Walmart's conduct, Plaintiffs believe that an opportunity to conduct discovery will reveal further support for Plaintiffs' allegations.

## INTRODUCTION

1.     Plaintiffs bring this action on behalf of themselves and on behalf of a proposed class of individuals that purchased baby food sold by Defendant Walmart, Inc. ("Walmart" or "Defendant") that was, unbeknownst to Plaintiffs and members of the Class and Subclasses (but

1

known to Walmart), tainted with numerous heavy metals and other toxins. Plaintiffs and members of the Class and Subclasses seek injunctive and monetary relief based on Walmart's unfair, false, deceptive, and misleading business practices in violation of the consumer protection statutes of the home states of Plaintiffs and members of the Class and Subclasses.

2.　Parents and other caregivers, including Plaintiffs and members of the Class and Subclasses, reasonably understood and believed that the baby food they purchase for their babies would be healthy, nutritious, and non-toxic. Alarmingly, they were wrong. On February 4, 2021, the United States House of Representatives Committee on Oversight and Reform's Subcommittee on Economic and Consumer Policy (the "House Subcommittee") released a report entitled "Baby Foods Are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury."[1] According to the Report, several brands of baby food sold in the United States contain unsafe levels of heavy metals and other toxins, including metals such as arsenic, lead, and cadmium. Notably, Walmart refused to participate in the Subcommittee's testing of its products despite explicit requests to do so. To this refusal the Subcommittee responded, "Walmart's evasion is concerning, as even limited independent testing [of Walmart products] has revealed the presence of toxic heavy metals in its baby food."

3.　Given the health risks associated with high levels of toxic heavy metals, the presence of these toxic substances in baby food is a material fact to consumers. Indeed, reasonable consumers, such as Plaintiffs and members of the Class and Subclasses (defined below), are unwilling to purchase baby food that contains unsafe levels of toxic heavy metals.

4.　Baby food manufacturers hold a special position of public trust; consumers believe that they would not sell products that are unsafe. Defendant Walmart knew that the presence of toxic heavy metals in their baby food was a material fact to consumers yet omitted and concealed

---

[1]　Baby Foods Are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury, Staff Report (the "Report"), Subcommittee on Economic and Consumer Policy of the Committee on Oversight and Reform, at 2, Feb. 4, 2021,
https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf (accessed February 24, 2021).

the unsafe level of heavy metals from consumers. To this day, Defendant Walmart's baby foods containing dangerous levels of toxic heavy metals bear no label or warning to parents.

5.     Accordingly, Plaintiffs bring this suit on behalf of themselves and a Class and Subclasses of similarly situated individuals seeking monetary and injunctive relief resulting from Defendant's sale of baby food that contained unsafe levels of toxic heavy metals.

## THE PARTIES

6.     Plaintiff Brandi Coleman ("Plaintiff Coleman") is a citizen of the state of Arkansas. Plaintiff Coleman purchased Parent's Choice baby foods repeatedly in Walmart stores located in Little Rock, Arkansas between January 2021 and May 2021.

7.     Plaintiff Tiffany Neal ("Plaintiff Neal") is a citizen of the state of Arkansas. Throughout 2019, Plaintiff Neal purchased Parent's Choice baby foods, including Defendant's Apple, Banana, and Blueberry Rice Rusks, repeatedly from the Walmart store located in Searcy, Arkansas.

8.     Plaintiff Felicia Dykes ("Plaintiff Dykes") is a citizen of the state of Georgia. Plaintiff Dykes purchased Parent's Choice baby foods repeatedly in Walmart and Food City stores located in Lafayette, Georgia, between January 2021 and February 2021.

9.     Plaintiff Dominick Grossi ("Plaintiff Grossi") is a citizen of the Commonwealth of Pennsylvania. Plaintiff Grossi purchased Parent's Choice baby foods repeatedly in Walmart stores located in Greensburg and Latrobe, Pennsylvania throughout 2016 and 2017.

10.     Plaintiff Galena Gutierrez ("Plaintiff Gutierrez") is a citizen of the commonwealth of Massachusetts, residing in Fairhaven, Massachusetts.  Plaintiff Gutierrez purchased Parent's Choice baby foods repeatedly in Walmart stores in Fairhaven, Massachusetts between January 2021 and February 2021.

11.     Plaintiff Anthony Harrison ("Plaintiff Harrison") is a citizen of the state of Missouri, residing in Kirksville, Missouri.  Plaintiff Harrison purchased Parent's Choice baby foods repeatedly in Walmart stores in Kirksville, Missouri throughout 2017 and 2018.

12.     Plaintiff Vito Scarola ("Plaintiff Scarola") is a citizen of the state of Florida. Plaintiff Scarola purchased Parent's Choice Baby Foods repeatedly in Walmart stores located in Orlando, Florida from October 2016 through December 2018.

13.     Plaintiff Melissa DiNovi ("Plaintiff DiNovi") is a citizen of the state of New York. In May 2020, Plaintiff DiNovi purchased multiple varieties of Parent's Choice baby foods, including Defendant's Banana Rice Rusks, Banana Yogurt Bites, Blueberry Puffed Grain snacks, Pear Fruit Puree pouch, Berries and Beets Fruit Puree pouch, and Mango Fruit Puree pouch, from the Walmart store located in Levittown, New York.

14.     Plaintiff Baylee Schaefer ("Plaintiff Schaefer") is a citizen of the state of Indiana, who purchased several types of Parent's Choice Baby Foods from November 2019 through February 2021. Plaintiff Schaefer made these purchases in Walmart stores in Clarkesville and Scottsburg, Indiana.

15.     Defendant Walmart, Inc. is a Delaware corporation with its principal place of business currently located at 702 Southwest 8th Street, Bentonville, Arkansas 72716.

### JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), because this case is a class action where the aggregate claims of all members of the proposed Classes exceed $5,000,000.00, exclusive of interest and costs, and the Plaintiffs and most members of the proposed Classes are citizens of a state different from Defendant.

17.     The Court has personal jurisdiction over the Defendant. The Defendant has transacted business and maintained substantial contact throughout the United States, including in this District. Defendant's conduct has taken place in, been directed at, and has had the intended effect of, causing injury to persons residing in, located in, or doing business throughout the United States, including in this District.

18.     Venue is proper in this District because a substantial portion of the events complained of herein took place in this District, and this Court has jurisdiction over the Defendant. Specifically, Defendant's decision-making regarding the marketing of the baby foods at issue,

including the decision to omit the material information regarding the toxic heavy metals in the products, was located in this District. Furthermore, Defendant is headquartered in this District.

## FACTUAL BACKGROUND

19. Defendant Walmart manufactures, markets, advertises, labels, represents, warrants, distributes, and sells baby food products throughout the United States under the brand name "Parent's Choice."

20. Walmart's website promotes the trustworthiness and quality of its Parent's Choice brand as follows:

> Walmart's special range of products for baby has been the choice of parents in American homes for years. What started as a line of baby formula is now a complete baby collection specially selected with love and attention to this special time in your family's life. ***With a trust and safety guarantee to make shopping for baby easy, Parent's Choice takes care of everything little ones need at an every day low price.***
>
> As a new parent, you've got enough on your mind; you shouldn't have to sweat the price of high-quality baby essentials like . . . baby food.[2]

21. Walmart produces several types of baby food products, including, but limited to the following (the "Parent's Choice Baby Foods"):

- Parent's Choice Little Hearts Puffed Grain Snack, Strawberry Apple
- Parent's Choice Organic Stage 2, Strawberry Rice Rusk
- Parent's Choice Organic Stage 2, Apple Rice Rusk
- Parent's Choice Organic Stage 2, Banana Rice Rusk
- Parent's Choice Blueberry Rice Rusks, Stage 2
- Parent's Choice Organic Brown Rice & Beans, Stage 2
- Parent's Choice Berries & Beets, Stage 2
- Parent's Choice Organic Stage 2, Whole Grain Macaroni Cheese Baby Food
- Parent's Choice State 2, Sweet Potato Baby Food
- Parent's Choice Stage 2, Butternut Squash Pineapple
- Parent's Choice Puffed Grain Snack

---

[2] https://www.walmart.com/cp/parents-choice-baby-products/4549164 (emphasis added).

- Parent's Choice Broccoli & Rice with Cheddar, Stage 3
- Parent's Choice Stage 3, Banana Baby Snack
- Parent's Choice 100% Organic Stage 2, Blueberry Kale Rice Baby Food
- Parent's Choice Organic Stage 2, Green Bean Baby Food

22.     Walmart's marketing and labeling of these products prominently uses and displays words such as "organic", "natural", "great for you" and "GMO free" and utilize the U.S.D.A. organic logo to emphasize the foods' suitability for consumption by young children and infants. Examples of such packaging and representations are provided below:





23.    Parent's Choice Baby Foods' packaging labels do not, however, alert potential customers that the Walmart Baby Food products contain toxic heavy metals.

***Independent Testing of Walmart Parent's Choice Products***

24.    In October 2019, an alliance of nonprofit organizations, scientists and donors named "Happy Babies Bright Futures" ("HBBF"), dedicated to designing and implementing "outcomes-based programs to measurably reduce babies' exposures to toxic chemicals"[3], published a report investigating the presence of heavy metals in baby foods (the "HBBF Report").[4] The HBBF Report concluded, after testing 168 different baby foods sold in the U.S., that "[n]inety-five percent of baby foods tested were contaminated with one or more of four toxic heavy metals—arsenic, lead, cadmium and mercury. All but nine of 168 baby foods contained at least one metal; most contained more than one."[5]

25.    The HBBF Report further identified various cereals and snacks products with "rice" "apple, pear, grape and other fruit juices", and "carrots and sweet potatoes" manufactured by baby food companies as particularly high in dangerous heavy metals.[6]

26.    In particular, the following chart from the HBBF Report shows that Walmart's Parent's Choice brand products contain dangerous levels of toxic heavy metals:

| Brand | Food | Food type | Arsenic (total, ppb) | Arsenic (inorganic, ppb) | Lead (ppb) | Cadmium (ppb) | Mercury (total, ppb) | Metro area where purchased | Retailer |
|---|---|---|---|---|---|---|---|---|---|
| Parent's Choice (Walmart) | Little Hearts Strawberry Yogurt Cereal Snack - Stage 3, 8+ months | Snack - other | 56.1 | – | 5.2 | 26.1 | 0.941 | Charlottesville, VA | Walmart |
| Parent's Choice (Walmart) | Organic Strawberry Rice Rusks - Stage 2, 6+ months | Snack - teething biscuits & rice rusks/cakes | 160 | 60 | 28.9 | 2.4 | 2.05 | Charlottesville, VA | Walmart |

[3]    https://www.hbbf.org/solutions

[4]    Jane Houlihan and Charlotte Brody, What's in My Baby's Food? A National Investigation Finds 95 Percent of Baby Foods Tested Contain Toxic Chemicals That Lower Babies' IQ, Including Arsenic and Lead , Healthy Babies Bright Futures, (Oct. 2019) ("HBBF Report"), available at: www.healthybabyfood.org/sites/healthybabyfoods.org/files/2019-10/BabyFoodReport_FULLREPORT_ENGLISH_R5b.pdf).

[5]    *Id.* at 6.

[6]    *Id.* at 10-11.

27.    Notably, the Little Hearts snack, a food product that Walmart markets as safe for infants as young as nine months old, was found to contain 5.2 ppb lead and 26.1 ppb cadmium. Similarly, HBBF's testing of the Parent's Choice's Organic Strawberry Rice Rusks, a food created for infants as young as six months, revealed that this product contained 66 ppb of inorganic arsenic, nearly 27 ppb lead, 2.4 ppb cadmium, and 2.05 ppb mercury.

28.    Notably, while the HBBF Report advocated for zero measurable amount of inorganic arsenic in baby food, Walmart's Strawberry Rice Rusks contain 66 ppb inorganic arsenic.  Given that this limited testing has revealed that both of Defendant's baby foods that were tested contain toxic heavy metals in dangerously high amounts, and given Defendant's refusal to cooperate with the Subcommittee's investigation, there is a great likelihood that additional comprehensive testing will show that other Parent's Choice baby foods also contain high levels of toxic heavy metals.

29.    This concern is supported by the Subcommittee's findings relating to the baby food products of Walmart's competitors that were subject to testing. For example, one of the independently tested foods, Parent's Choice's Strawberry Rice Rusks, contains organic rice flour. The second food tested, Parent's Choice Strawberry Yogurt Cereal Snack, contains rice flour.  One of the major baby food manufacturers that did cooperate with the Subcommittee, Beech-Nut, admitted that "the majority of its ingredients that tested over 100 ppb inorganic arsenic . . . were rice-based (either rice, *rice flour*, or organic)."

30.    Parent's Choice's puffed rice and cereal snacks also contain whole wheat flour and whole oat flour.  Hain Celestial Group, Inc., another baby food manufacturer that did cooperate with the Subcommittee's requests for internal testing, admitted that two of the ingredients it used (*i.e.* oat flour and wheat flour) had tested dangerously high in cadmium.  It also admitted that its whole wheat flour tested contained heightened levels of lead.

31.    While not included in the HBBF's independent testing, Walmart's Parent's Choice product "Organic Brown Rice and Beans" is similarly suspect since the primary ingredient in this

product is organic long grain brown rice. As the Subcommittee has reported: "organic brown rice was the ingredient that tested highest in inorganic arsenic – 309 ppb." Because this ingredient in other manufacturers products tested inappropriately high for arsenic, there is a greater concern Walmart's Parent's Choice's Organic Brown Rice and Beans puree (which it refused to have tested) may also contain high amounts of inorganic arsenic, and perhaps other toxic heavy metals, too.

32.     Overall, Walmart's refusal to comply with the Subcommittee's investigations and requests raises serious concerns as to whether its diverse array of baby foods contain unhealthy amounts of toxic heavy metals and put babies in danger.

33.     In addition, a 2018 study of numerous nationally distributed packaged baby foods by Consumer Reports ("CR"),[7] including the "Little Puffs Cereal Snack, Strawberry Apple" from Walmart's "Parent's Choice" brand, found that every product tested had measurable levels of at least one of the following heavy metals: cadmium, inorganic arsenic, or lead.

34.     Furthermore, CR noted that approximately 68% had "worrisome" and "concerning" levels of at least one heavy metal. Fifteen of the foods tested would pose potential health risks to children who regularly eat just one serving or less per day. Two rice cereals contained measurable levels of methylmercury.

35.     Products containing rice or a rice derivative, including Walmart's Little Puffs cereal snacks, fared worst in the CR study due to the presence of large amounts of inorganic arsenic, lead, and cadmium. As a category, snack foods – bars, cookies, crackers, crunches, crisps, rice rusks, teething biscuits, and puffs – were most problematic, generally because of their rice content. This finding is especially concerning given that approximately seventy-two percent (72%) of parents said they feed their child at least one of the types of snack foods CR tested.

---

[7]     Jesse Hirsch, *Heavy Metals in Baby Food: What You Need to Know*, CONSUMER REPORTS.ORG (March 9, 2018) available at https://www.consumerreports.org/food-safety/heavy-metals-in-baby-food/

36.    In sum, the limited independent testing conducted to date demonstrates that a significant number of Walmart's Parent's Choice brand baby food products contain toxic heavy metals in dangerously high amounts.

### *Heavy Metal Neurotoxins & Their Effect on Child Development*

37.    Baby food producers promote their product testing and safety procedures because parents and caretakers pay attention to what ingredients are in the baby food they purchase for their children. This is because adults do not want to expose their children to substances and/or chemicals that would either harm the child or inhibit the child's development.

38.    In particular, parents want to avoid exposing their children to the heavy metals arsenic, lead, mercury, and cadmium. These heavy metals are a type of substance known as neurotoxins, or substances that "alter[] the structure of function of the nervous system."[8] Exposure to these neurotoxins have been shown to "diminish quality of life, reduce academic achievement, and disturb behavior, with profound consequences for the welfare and productivity of entire societies."[9]

39.    Research continuously shows that exposure to food containing these heavy metals causes "troubling risks for babies, including cancer and lifelong deficits in intelligence[.]" Specifically, the heavy metals "can harm a baby's developing brain and nervous system" and cause negative impacts such as "the permanent loss of intellectual capacity and behavioral problems like attention-deficit hyperactivity disorder (ADHD)."[10] These developmental conditions can be caused by exposure to even trace amounts of these substances.[11]

40.    For these reasons, organizations such as the Food and Drug Administration ("FDA") and the World Health Organization ("WHO") have declared arsenic, lead, cadmium, and mercury "dangerous to human health, particularly to babies and children, who are most vulnerable

---

[8]    *Neurotoxin*, https://www.britannica.com/science/neurotoxin (accessed February 24, 2021).
[9]    HBBF Report at 13.
[10]    *Id.* at 6.
[11]    *Id.* at 1.

11

to their neurotoxic effects."[12] Further, the FDA has acknowledged that "exposure to [these four heavy] metals are likely to have the most significant impact on public health" and has prioritized them in connection with its heavy metals workgroup looking to reduce the risks associated with human consumption of heavy metals.[13]

## A. Arsenic

41.    The heavy metal arsenic has been shown to cause "cognitive deficits among school-age children exposed early in life, and neurological problems in adults who were exposed to arsenic-poisoned milk as infants."[14]

42.    The effects of arsenic exposure are irreversible, and in addition to the cognitive and neurological effects it has on child development, arsenic also creates a risk of "respiratory, gastrointestinal, hematological, hepatic, renal, skin, neurological and immunological effects, as well as damaging effects on the central nervous system[.]"[15]

43.    Arsenic's harmful effects have caused both the U.S. Environmental Protection Agency ("EPA") and U.S. Food and Drug Administration ("FDA") to set standards limiting the allowable amount of arsenic in products meant for human consumption. For example, the FDA has set a limit of 10 parts per billion ("PPB") for apple juice, and the EPA has set the same limit for drinking water. Additionally, the FDA has set a limit of 10 parts per billion for bottled water[16]

---

[12]    See Baby Foods Are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury, Staff Report (the "Report"), Subcommittee on Economic and Consumer Policy of the Committee on Oversight and Reform, at 2, February 4, 2021,
https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf (accessed Feb. 4, 2021).

[13]    *Id.* at 3.

[14]    HBBF Report at 13.

[15]    Report at 10 (quoting Miguel Rodríguez-Barranco et al., *Association of Arsenic, Cadmium and Manganese Exposure with Neurodevelopment and Behavioural Disorders in Children: A Systematic Review and Meta-Analysis* (June 1, 2013),
https://pubmed.ncbi.nlm.nih.gov/23570911/).

[16]    Laura Reiley, New Report Finds Toxic Heavy Metals in Popular Baby Foods. FDA Failed to *Warn Consumers of Risk*, The Washington Post (Feb. 4, 2021),
https://www.washingtonpost.com/business/2021/02/04/toxic-metals-baby-food/ (accessed Feb. 22, 2021).

12

and is considering limiting the action level for arsenic in rice cereals for infants.[17] The FDA has taken action against companies whose products contain arsenic levels exceeding this limit.[18]

### B. *Lead*

44.     Exposure to the heavy metal lead has been shown to cause harm to children's brain and nervous systems and is associated with a range of negative health outcomes including "behavioral problems, decreased cognitive performance, delayed puberty, and reduced postnatal growth."[19] Even very low exposure levels to lead "cause lower academic achievement, attention deficits and behavior problems. No safe level of exposure has been identified."[20]

45.     For example, one study found that "children age 0 to 24 months lose more than 11 million IQ points from exposure to arsenic and lead in food."[21] Additionally, studies have established a link between lead exposure and Attention-Deficit/Hyperactivity Disorder (ADHD).[22]

46.     The proven negative effects of lead exposure have caused several health organizations—including the American Academy for Pediatrics, the Environmental Defense Fund, and Consumer Reports—to recommend that lead in baby foods not exceed 1 ppb,[23] and "[t]he European Union has set the maximum lead level in infant formula to 20 ppb."[24]

### C. *Mercury*

---

[17]     FDA, Draft Guidance for Industry: Inorganic Arsenic in Rice Cereals for Infants: Action *Level* (Apr. 2016), https://www.fda.gov/downloads/Food/GuidanceRegulation/GuidanceDocuments RegulatoryInformation/UCM493152.pdf (accessed Feb. 22, 2021).

[18]     See, e.g. Warning Letter from FDA to Valley Processing, Inc. (June 2, 2016), https://www.fda.gov/news-events/press-announcements/federal-judge-enters-consent-decree-against-washington-state-juice-processor (accessed Feb. 24, 2021).

[19]     Report at 11.

[20]     HBBF Report at 13.

[21]     *Id.*

[22]     Report, at 12 (citing Gabriele Donzelli *et al.*, *The Association Between Lead and Attention-Deficit/Hyperactivity Disorder: A Systematic Review* (Jan. 29, 2019), http://www.mdpi.com/1660-4601/16/3/382/htm).

[23]     Laura Reiley, *New Report Finds Toxic Heavy Metals in Popular Baby Foods. FDA Failed to Warn Consumers of Risk*, THE WASHINGTON POST (Feb. 4, 2021), available at https://www.washingtonpost.com/business/2021/02/04/toxic-metals-baby-food/ (last accessed Feb. 22, 2021).

[24]     *Id.*

47.     The World Health Organization warns that mercury "may have toxic effects on the nervous, digestive and immune systems, and on lungs, kidneys, skin and eyes" and considered mercury "one of the top ten chemicals or groups of chemicals of major public health concern."[25]

48.     It has been recognized that "[y]oung and unborn children are at greatest risk from mercury exposure because their nervous systems are still developing"[26] and that exposure to even a small amount of the heavy metal mercury can cause "serious health problems, and is a threat to the development of the child [] early in life."[27] For example, exposure to even low doses of mercury "may delay a child's walking and talking, shorten attention span and cause learning disabilities."[28]

49.     Exposure to mercury has also been linked to higher risk of lower IQ scores and intellectual disability in children[31] and mercury exposure at two and three years of age has been positively associated with autistic behaviors among pre-school age children.[29]

50.     The EPA has set a maximum mercury level in drinking water to 2 ppb.[30]

### D.     *Cadmium*

51.     The heavy metal cadmium is considered a neurotoxin. Eating food or drinking water with very high cadmium levels severely irritates the stomach, leading to vomiting and diarrhea, and sometimes death. Eating lower levels of cadmium over a long period can lead to kidney damage and can cause bones to become fragile and break easily. Exposure to cadmium in air has caused lung cancer, and perhaps prostate cancer, in workers. The US Department of Health

---

[25]     *Id.*

[26]     Missouri Dept. of Nat. Resources, *Mercury Can Affect Human Health*, https://dnr.mo.gov/env/mercury/mercury-impact.htm#:~:text=Mercury%20Can%20Affect%20Human%20Health,and%20developmental%20disorders%20in%20humans.&text=In%20low%20doses%2C%20mercury%20may,with%20fertility%20and%20blood%20pressure (accessed Feb. 22, 2021).

[27]     *Mercury and health*, https://www.who.int/news-room/fact-sheets/detail/mercury-and-health#:~:text=Exposure%20to%20mercury%20%E2%80%93%20even%20small,%2C%20kidneys%2C%20skin%20and%20eyes (accessed Feb. 24, 2021).

[28]     Missouri Dept. of Nat. Resources, *Mercury Can Affect Human Health*, https://dnr.mo.gov/env/mercury/mercury-impact.htm#:~:text=Mercury%20Can%20Affect%20Human%20Health,and%20developmental%20disorders%20in%20humans.&text=In%20low%20doses%2C%20mercury%20may,with%20fertility%20and%20blood%20pressure\ (accessed Feb. 22, 2021).

[29]     HBBF Report at 14.

[30]     Report at 12-13.

and Human Services ("HHS") and the EPA both consider cadmium and cadmium compounds human carcinogens (meaning that they can cause cancer).[31]

52.     Children with higher cadmium levels are three times more likely to have learning disabilities and participate in special education, according to a new study led by Harvard University researchers.[32]

53.     The EPA has set a maximum cadmium level in drinking water to 5 ppb, the FDA has set a maximum level in bottled water to 5 ppb, and the WHO set a maximum cadmium level in drinking water to 3 ppb.[33]

\*          \*          \*

54.     As James E. Rogers, Ph.D., the director of food safety research and testing at CR, stated, "[b]abies and toddlers are particularly vulnerable due to their smaller size and developing brains and organ systems." "They also absorb more of the heavy metals that get into their bodies than adults do."

55.     The risk from heavy metals grows over time as they accumulate in the kidneys and other internal organs. Tunde Akinleye, a chemist in CR's Food Safety Division who led the testing, stated that, "[t]hese toxins can remain in your body for years."[34] Regular consumption of even small amounts of toxic heavy metals over a long period of time may raise the risk of bladder, lung, and skin cancer; cognitive and reproductive problems; and type 2 diabetes; among other conditions.

---

[31]     NYS Dept. of Health, *Cadmium in Children's Jewelry*,
https://www.health.ny.gov/environmental/chemicals/cadmium/cadmium_jewelry.htm#:~:text=C
hildren%20can%20be%20exposed%20to,to%20cadmium%20in%20children's%20jewelry (accessed Feb. 22, 2021).
[32]     Marla Cone, *Is Cadmium as Dangerous for Children as Lead?*, SCIENTIFIC AMERICAN (Feb. 10, 2012), https://www.scientificamerican.com/article/is-cadmium-as-dangerous-for-children-lead/ (accessed Feb. 22, 2021).
[33]     Report at 29.
[34]     *See* Hirsch, at fn 8.

## SUBSTANTIVE ALLEGATIONS

56. On November 6, 2019, in response to reports alleging high levels of toxic heavy metals in baby foods, the United States House of Representatives Committee on Oversight and Reform Subcommittee on Economic and Consumer Policy (the "Subcommittee") requested internal documents and test results from several of the United States' largest producers of baby foods, including Defendant Walmart.

57. Defendant Walmart outright refused to cooperate with the Subcommittee's requests. This refusal prompted the Subcommittee to state that it was "greatly concerned that [Walmart's] lack of cooperation might be obscuring the presence of even higher levels of toxic heavy metals in their baby food products than their competitors' products." Indeed, the Subcommittee noted that "Walmart's evasion is concerning, as even limited independent testing has revealed the presence of toxic heavy metals in its baby food."

58. After reviewing the internal documents and test results it received, the Subcommittee made the disturbing discovery that "commercial baby foods are tainted with significant levels of toxic heavy metals, including arsenic, lead, cadmium, and mercury."

## WALMART FALSELY, MISLEADINGLY, AND/OR DECEPTIVELY CLAIMED ITS FOOD WAS FIT FOR CHILD CONSUMPTION

59. Baby food manufacturers hold a special position of public trust. Consumers believe that they would not sell unsafe products. Consumers also believe that the federal government would not knowingly permit the sale of unsafe baby food. Defendant Walmart took advantage of its position of trust.

60. Walmart advertised its products as safe, healthy, nutritious, natural, organic, and safe for consumption. By doing so, Walmart had a duty to ensure that its statements regarding its products were true and not false, misleading, or deceptive, yet continued to make false, misleading, and deceptive statements regarding the safety of its baby foods despite knowledge that its baby foods contained unsafe levels of heavy metals.

61. Walmart violated this duty by marketing and advertising its baby foods through statements regarding the safety of its baby foods despite knowing that its baby foods contained dangerous levels of heavy metals.

62. Walmart purposefully induced reasonable consumers to rely on its marketing, which explicitly and implicitly conveys that its baby food products are fit for consumption by infants and children. Such marketing includes words written on the containers of Walmart's baby foods, including, but not limited to, the actual name of the product, "Parent's Choice," which implies the safety-conscious decisions parents make in selecting a baby food brand. Other marketing phrases used by Walmart to convey that its Parent's Choice products are a healthy choice for children, include:

- "You'll love this Parent's Choice product. In fact, we guarantee it";
- "perfect size and texture for your child's developing hands, mouth and teeth";
- "Great for baby's self-feed journey";
- "Great for You"
- "Naturally flavored Gluten-Free";
- "No Artificial Colors";
- "Made With Real Fruits and Vegetables"
- "Naturally Flavored"
- "Non GMO Project Verified"

63. Walmart's false and misleading advertising deceives consumers into believing that they are purchasing and feeding their babies safe and nutritious baby foods, and, through this deception, Defendant seeks to induce consumers to purchase Parent's Choice Baby Foods when they would otherwise have purchased other baby foods that do not contain toxic heavy metals or other undesirable toxins and contaminants.

64. Walmart knew that its customers trust the quality of its products and that customers expect Defendant's products to be free of toxic heavy metals and other undesirable toxins and contaminants. For example, the company's website offers the following general reassurance about the Parent's Choice brand: "With a trust and safety guarantee to make shopping for baby easy, Parent's Choice takes care of everything little ones need...."[35] As for the specific products, in the

---

[35] https://www.walmart.com/cp/parents-choice-baby-products/4549164

"About This Item" for the "Little Puffs" product, Defendant states that "Since 1998, Walmart's Parent's Choice has been trusted by parents across the country to provide quality, affordable baby products."[36] This statement is also found on the "About This Item" section for Walmart's Organic Rice Husks product.[37] These are the same products that the HBBF Report previous tested and found contained dangerous amounts of heavy metals.

65.     Walmart's knowledge that its customers trust the quality of its products, their expectations that Parent's Choice Baby Foods will be free of toxic heavy metals and other undesirable toxins and contaminants, and consumers' willingness to pay more for premium baby foods that are free from toxins, contaminants, or chemicals is evident in Walmart's marketing campaigns that are intended to convey to consumers that Parent's Choice Baby Foods possess certain qualities and characteristics that justify a premium price.

66.     Walmart intended for consumers to rely on its marketing and the representations on its products' labels, and reasonable consumers, including Plaintiffs, the Class and the Subclasses did in fact so rely. Defendant's marketing and advertising is deceptive, misleading, unfair, false, and/or fraudulent because, among other things, the Parent's Choice Baby Foods include undisclosed toxic heavy metals or other undesirable toxins or contaminants.

67.     As a result of Walmart's false, misleading, and deceptive statements, Plaintiffs and members of the Class and Subclasses bought Parent's Choice Baby Foods they would not have otherwise bought and paid more for Parent's Choice Baby Foods than they would have paid had it been fully disclosed that Parent's Choice Baby Foods contained dangerous levels of heavy metals.

## DEFENDANT WALMART FAILED TO CONSUMERS NATIONWIDE THAT ITS BABY FOODS CONTAINED DANGEROUS LEVEL OF HEAVY METALS

68.     Despite the evidence that Parent's Choice Baby Foods contained dangerously high levels of heavy metals, Parent's Choice Baby Foods do not have a disclaimer concerning the

---

[36] https://www.walmart.com/grocery/ip/Parent-s-Choice-Little-Hearts-Puffed-Grain-Snack-Strawberry-Apple-1-48-oz/38763848
[37]      https://www.walmart.com/grocery/ip/48-Pack-Parent-s-Choice-Organic-Stage-2-Strawberry-Baby-Snack-1-76-oz-Box/171533478

presence of toxic heavy metals or other undesirable toxins or contaminants that would inform consumers that the foods contain toxic heavy metals and/or that toxic heavy metals can accumulate over time in a child's body to the point where poisoning, injury, and/or disease can occur. Rather, Parent's Choice Baby Foods' product packaging and marketing create the impression that these products are healthy for consumption and preferable over other brands of baby foods.

69.     Walmart knew or should have been aware that a consumer would be feeding its products to children, often making its products the primary source of food for a child. This, in turn, leads to repeated exposure of the heavy metals to the child.

70.     Walmart thus wrongfully and misleadingly advertised and sold the Parent's Choice Baby Foods without any label or warning indicating to consumers that these products contain heavy metals, or that these toxins can over time accumulate in the baby's body to the point where poisoning, injury, and/or disease can occur. Walmart intentionally omitted these facts from its marketing, advertising and labeling in order to induce and mislead reasonable consumers into purchasing Parent's Choice Baby Foods.

71.     Walmart created, allowed, negligently oversaw, and/or authorized the unlawful, fraudulent, unfair, misleading, and/or deceptive labeling and advertising for its baby foods. The marketing for the baby foods, relied upon by Plaintiffs, was prepared, reviewed, and/or approved by Walmart and its agents and was disseminated by Walmart and its agents through marketing, advertising, packaging, and labeling that contained the misrepresentations alleged herein. The marketing for the baby foods was designed to encourage consumers to purchase the baby foods and reasonably misled the reasonable consumer into purchasing the baby foods.

72.     Walmart continues to wrongfully induce consumers to purchase its baby foods that are not as advertised.

73.     Plaintiffs bring this proposed consumer class action individually and on behalf of all other members of the Class, who, from the applicable limitations period up to and including the present, purchased for use and not resale any of Defendant's tainted baby foods.

74.     As a result of Defendant's negligent, reckless, and/or knowingly deceptive conduct as alleged herein, Plaintiffs were injured when they paid the purchase price or a price premium for Parent's Choice Baby Foods that did not deliver what was promised. Plaintiffs paid the purchase price on the assumption that the labeling of the baby foods was accurate and that it was free of toxic heavy metals and safe to ingest. Plaintiffs would not have paid this money or fed their baby food containing toxic heavy metals had they known the truth that Defendant's baby foods contain excessive degrees of toxic heavy metals. Damages can be calculated through expert testimony at trial.

## TOLLING AND ESTOPPEL

### I.     DISCOVERY RULE TOLLING

75.     Plaintiffs and the Classes and Subclasses had no way of knowing about Defendant Walmart's conduct with respect to the presence of toxic heavy metals.

76.     Neither Plaintiffs nor any other members of the Class or Subclasses, through the exercise of reasonable diligence, could have discovered the conduct alleged herein.

77.     Plaintiffs and members of the Class and Subclasses did not discover and did not know of facts that would have caused a reasonable person to suspect that Walmart was engaged in the conduct alleged herein.

78.     For these, reasons, all applicable statutes of limitation have been tolled by the discovery rule with respect to claims asserted by Plaintiffs, the Classes, and the Subclasses.

### II.    FRAUDULENT CONCEALMENT TOLLING

79.     By failing to provide notice of the presence of toxic heavy metals in the Parent's Choice Baby Foods, Defendant Walmart concealed its conduct and the existence of the claims asserted herein from Plaintiffs and the members of the Class and Subclasses.

80.     Upon information and belief, Defendant Walmart intended its acts to conceal the facts and claims from Plaintiffs and members of the Classes and Subclasses. Plaintiffs and the members of the Classes and Subclasses were unaware of the facts alleged herein without any fault or lack of diligence on their part and could not have reasonably discovered Defendant Walmart's

conduct. For this reason, any statute of limitations that otherwise may apply to the claims of Plaintiffs or members of the Classes or Subclasses should be tolled.

## CLASS ACTION ALLEGATIONS

81.     Plaintiffs bring this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3).

82.     Plaintiffs seek class certification on behalf of a class defined as follows:

**NATIONWIDE CLASS:** all persons in the United States, and its territories who, from the beginning of any applicable limitations period through the present, purchased the Parent's Choice Baby Foods for household or business use, and not for resale (the "Class").

83.     Plaintiffs also seek class certification on behalf of the following subclasses defined below.

84.     Plaintiff Scarola seeks certification on behalf of a Florida Subclass:

**THE FLORIDA SUBCLASS:** all persons who are or were citizens of the State of Florida who, from the beginning of any applicable limitations period through the present, purchased the Parent's Choice Baby Foods for household or business use, and not for resale (the "Florida Subclass").

85.     Plaintiff Schaefer seeks certification on behalf of an Indiana Subclass:

**THE INDIANA SUBCLASS:** all persons who are or were citizens of the State of Indiana who, from the beginning of any applicable limitations period through the present, purchased the Parent's Choice Baby Foods for household or business use, and not for resale (the "Indiana Subclass").

86.     Plaintiff Dykes seeks certification on behalf of a Georgia Subclass:

**THE GEORGIA SUBCLASS:** all persons who are or were citizens of the State of Georgia who, from the beginning of any applicable limitations period through the present, purchased the Parent's Choice Baby Foods for household or business use, and not for resale (the "Georgia Subclass").

87.     Plaintiff Gutierrez seeks certification on behalf of a Massachusetts Subclass:

**THE MASSACHUSETTS SUBCLASS:** all persons who are or were citizens of the State of Massachusetts who, from the beginning of any applicable limitations period through the present, purchased the Parent's Choice Baby Foods for household or business use, and not for resale (the "Massachusetts Subclass").

88.     Plaintiff DiNovi seeks certification on behalf of a Massachusetts Subclass:

**THE NEW YORK SUBCLASS:** all persons who are or were citizens of the State of New York who, from the beginning of any applicable limitations period through the present, purchased the Parent's Choice Baby Foods for household or business use, and not for resale (the "New York Subclass").

89.     Plaintiffs Coleman and Neal seek certification on behalf of an Arkansas Subclass:

**THE ARKANSAS SUBCLASS:** all persons who are or were citizens of the State of Arkansas who, from the beginning of any applicable limitations period through the present, purchased the Parent's Choice Baby Foods for household or business use, and not for resale (the "Arkansas Subclass").

90.     Plaintiff Harrison seeks certification on behalf of a Missouri Subclass:

**THE MISSOURI SUBCLASS:** all persons who are or were citizens of the State of Missouri who, from the beginning of any applicable limitations period through the present, purchased the Parent's Choice Baby Foods for household or business use, and not for resale (the "Missouri Subclass").

91.     Plaintiff Grossi seeks certification on behalf of a Pennsylvania Subclass:

**THE PENNSYLVANIA SUBCLASS:** all persons who are or were citizens of the Commonwealth of Pennsylvania who, from the beginning of any applicable limitations period through the present, purchased the Parent's Choice Baby Foods for household or business use, and not for resale (the "Pennsylvania Subclass").

92.     Plaintiffs reserve the right to amend, modify or refine the definitions of the Class or Subclasses based upon discovery of new information and in order to accommodate any of the Court's manageability concerns.

93.     Excluded from the Class and Subclasses are: (a) any Judge or Magistrate Judge presiding over this action and members of their staff, as well as members of their families; (b) Defendant and Defendant's predecessors, parents, successors, heirs, assigns, subsidiaries, and any entity in which any Defendant or its parents have a controlling interest, as well as Defendant's current or former employees, agents, officers, and directors; (c) persons who properly execute and file a timely request for exclusion from the Classes or Subclass; (d) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (e) counsel for Plaintiffs and Defendant; and (f) the legal representatives, successors, and assigns of any such excluded persons.

94.    *Ascertainability.* The proposed Classes and Subclasses are readily ascertainable because they are defined using objective criteria so as to allow class members to determine if they are part of a Class or Subclass. Further, the Classes and Subclasses can be readily identified through records maintained by Defendant Walmart.

95.    *Numerosity (Rule 23(a)(1)).* The Classes and Subclasses are so numerous that joinder of individual members herein is impracticable. The exact number of members of the Class and Subclasses, as herein identified and described, is not known, but sales figures indicate that millions of individuals have purchased the Parent's Choice Baby Foods.

96.    *Commonality (Rule 23(a)(2)).* Common questions of fact and law exist for each cause of action and predominate over questions affecting only individual Class and Subclass members, including the following:

a.    whether Defendant owed a duty of care to Plaintiffs and the Classes;

b.    whether Defendant knew or should have known that the Parent's Choice Baby Foods contained, or may contain, heavy metals;

c.    whether Defendant wrongfully represented and continues to represent that the Parent's Choice Baby Foods are natural and safe for human infant consumption;

d.    whether Defendant wrongfully represented and continues to represent that the Parent's Choice Baby Foods are healthy, superior quality, nutritious and safe for consumption;

e.    whether Defendant wrongfully represented and continues to represent that the Parent's Choice Baby Foods are natural;

f.    whether Defendant wrongfully represented and continues to represent that the Parent's Choice Baby Foods appropriate for consumption by various "Stage[s]" of babies;

g.    whether Defendant wrongfully represented and continues to represent that the manufacturing of the Parent's Choice Baby Foods is subjected to rigorous standards, including testing for heavy metals;

h.    whether Defendant wrongfully failed to disclose that the Parent's Choice Baby Foods contained, or may contain, heavy metals;

i.    whether Defendant's representations in advertising, warranties, packaging, and/or labeling are false, deceptive, and misleading;

j.    whether those representations are likely to deceive a reasonable consumer;

k. whether a reasonable consumer would consider the presence, or risk of, heavy metals as a material fact in purchasing baby food;

l. whether Defendant had knowledge that those representations were false, deceptive, and misleading;

m. whether Defendant continues to disseminate those representations despite knowledge that the representations are false, deceptive, and misleading;

n. whether a representation that a product is healthy, superior quality, nutritious and safe for consumption and does not contain arsenic, mercury, cadmium, and lead is material to a reasonable consumer;

o. whether Defendant's representations and descriptions on the labeling of the Parent's Choice Baby Foods are likely to mislead, deceive, confuse, or confound consumers acting reasonably;

p. whether Defendant breached its express warranties;

q. whether Defendant breached its implied warranties;

r. whether Defendant engaged in unfair trade practices;

s. whether Defendant engaged in false advertising;

t. whether Defendant's conduct was negligent per se;

u. whether Defendant made negligent and/or fraudulent misrepresentations and/or omissions;

v. whether Plaintiffs and the members of the Class are entitled to actual, statutory, and punitive damages; and

w. whether Plaintiffs and members of the Class are entitled to declaratory and injunctive relief.

97.     *Typicality (Rule 23(a)(4))*. Plaintiffs' claims are typical of the claims of the other members of the proposed Class and Subclasses. Plaintiffs and members of the Class and Subclasses (as applicable) suffered injuries as a result of Defendant Walmart's wrongful conduct that is uniform across the Class and Subclasses.

98.     *Adequacy (Rule 23(a)(4))*. Plaintiffs have and will continue to fairly and adequately represent and protect the interests of the Class and Subclasses. Plaintiffs have retained counsel competent and experienced in complex litigation and class actions. Plaintiffs have no interest that

is antagonistic to those of the Class and Subclasses, and Defendant has no defenses unique to Plaintiffs. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and Subclasses, and they have the resources to do so. Neither Plaintiffs nor Plaintiffs' counsel have any interest adverse to those of the other members of the Class and Subclasses.

99.     *Substantial Benefits*. This class action is appropriate for certification because class proceedings are superior to other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class and Subclasses is impracticable. The prosecution of separate actions by individual members of the Class and Subclasses would impose heavy burdens upon the Courts and Defendant, would create a risk of inconsistent or varying adjudications of the questions of law and fact common to members of the Classes and Subclasses, and would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests. This proposed class action presents fewer management difficulties than individual litigation, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Class treatment will create economies of time, effort, and expense and promote uniform decision-making.

100.    Class certification, therefore, is appropriate under Fed. R. Civ. P. 23(b)(3) because the above common questions of law or fact predominate over any questions affecting individual members of the Class, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

101.    Class certification is also appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Classes and Subclasses, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Class and Subclasses as a whole.

102.     Plaintiffs reserve the right to revise the foregoing class allegations and definitions based on facts learned and legal developments following additional investigation, discovery, or otherwise.

## FIRST CLAIM FOR RELIEF

### BREACH OF EXPRESS WARRANTY
**(on behalf of the Class or, alternatively, the State Subclasses)[38]**

103.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

104.     Defendant Walmart marketed and sold the Parent's Choice Baby Foods into the stream of commerce with the intent that the Parent's Choice Baby Foods would be purchased by Plaintiffs and the Class.

105.     Defendant expressly warranted, advertised, and represented to Plaintiffs and the Class that its Parent's Choice Baby Foods were and are safe, healthy, and appropriate for infant and child consumption.

106.     Defendant made these express warranties regarding the Parent's Choice Baby Foods' quality, ingredients, and fitness for consumption in writing through its website, advertisements, and marketing materials and on the Parent's Choice Baby Foods' packaging and labels. These express warranties became part of the basis of the bargain that Plaintiffs and the Class entered into upon purchasing the Parent's Choice Baby Foods.

107.     Defendant's advertisements, warranties, and representations were made in connection with the sale of the Parent's Choice Baby Foods to Plaintiffs and the Class. Plaintiffs and the Class relied on Defendant's advertisements, warranties, and representations regarding the Parent's Choice Baby Foods in deciding whether to purchase Defendant's products.

108.     Defendant's Parent's Choice Baby Foods do not conform to Defendant's advertisements, warranties, and representations in that they are not safe, healthy, and appropriate for infant and child consumption and contain, or may contain, levels of various heavy metals.

---

[38] "State Subclasses" refers to the Florida Subclass, Georgia Subclass, Massachusetts Subclass, Missouri Subclass, New York, Arkansas, and Pennsylvania Subclass described above in paragraphs 81-91.

109. Defendant Walmart was at all times aware, or should have been aware, of the toxic or dangerous levels of heavy metals in Parent's Choice Baby Foods. Defendant Walmart was on notice of these concerns with their products, but nowhere on the package labeling or on Defendant Walmart's website or other marketing materials did Defendant Walmart warn Plaintiffs and members of the Class and Subclasses that they were at risk of feeding their children food and/or beverages with toxic or dangerous levels of heavy metals.

110. Instead, Defendant Walmart concealed the high levels of heavy metals contained in the Parent's Choice Baby Foods and deceptively represented that these products were safe, healthy, and appropriate for infant or child consumption. Defendant Walmart thus utterly failed to ensure that the material representations it was making to consumers were true.

111. The toxic and/or dangerous levels of heavy metals at issue in the Parent's Choice Baby Foods existed when they left Defendant's possession or control and were sold to Plaintiffs and members of the putative classes. The levels of heavy metals contained in the Parent's Choice Baby Foods were undiscoverable by Plaintiffs and members of the putative classes at the time of purchase of the Parent's Choice Baby Foods

112. As manufacturers, marketers, advertisers, distributors and sellers of the Parent's Choice Baby Foods, Defendant Walmart had exclusive knowledge and notice of the fact that the Parent's Choice Baby Foods did not conform to the affirmations of fact and promises.

113. In addition, or in the alternative, to the formation of an express contract, Defendant made each of the above-described representations to induce Plaintiffs and members of the Class and Subclasses to rely on such representations.

114. Defendant Walmart's affirmations of fact and promises were material, and Plaintiffs and members of the putative classes reasonably relied upon such representations in purchasing the Parent's Choice Baby Foods.

115. All conditions precedent to Defendant's liability for its breach of express warranty have been performed by Plaintiffs or members of the Class or Subclasses.

116. Affording Defendant Walmart an opportunity to cure its breaches of written warranties would be unnecessary and futile here. Defendant Walmart was placed on reasonable notice of the levels of heavy metals in the Parent's Choice Baby Foods and breach of the warranties based on their scientific research and expertise in the food production industry. Defendant Walmart has had ample opportunity to cure the high level of heavy metal in their Parent's Choice Baby Foods to make them safe and healthy for consumption by Plaintiffs and members of the putative classes and their children, but have failed to do so.

117. Defendant Walmart has also had notice of their breach as set forth herein by virtue of the publication of the Report and the prior 2019 report issued by Healthy Baby Bright Future.

118. As a direct and proximate result of Defendant Walmart's breaches of express warranty, Plaintiffs and members of the putative classes have been damaged because they did not receive the products as specifically warranted by Defendant Walmart. Plaintiffs and members of the putative classes did not receive the benefit of the bargain and suffered damages at the point of sale stemming from their overpayment of the Parent's Choice Baby Foods.

119. Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendant's failure to deliver goods conforming to their express warranties and resulting breach.

**SECOND CLAIM FOR RELIEF**

**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(on behalf of the Class or, alternatively, the State Subclasses)**

120. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

121. Defendant is a merchant engaging in the sale of goods to Plaintiffs and the Class.

122. There was a sale of goods from Defendant to Plaintiffs and the Class.

123. At all times mentioned herein, Defendant manufactured or supplied Parent's Choice Baby Foods, and prior to the time the Parent's Choice Baby Foods were purchased by Plaintiffs and the Class, Defendant impliedly warranted to them that the Parent's Choice Baby Foods were of merchantable quality, fit for their ordinary use (consumption by babies), and

conformed to the promises and affirmations of fact made on the Parent's Choice Baby Foods' containers and labels, including that the food was natural and safe and appropriate for human infant consumption. Plaintiffs and the Class relied on Defendant's promises and affirmations of fact when they purchased the Parent's Choice Baby Foods.

124.   Contrary to these representations and warranties, the Parent's Choice Baby Foods were not fit for their ordinary use, consumption by babies, and did not conform to Defendant's affirmations of fact and promises as they contained, or were at risk of containing, heavy metals and/or unnatural or other ingredients or contaminants that do not conform to the packaging.

125.   Defendant breached its implied warranties by selling Parent's Choice Baby Foods that failed to conform to the promises or affirmations of fact made on the container or label as each product contained heavy metals and/or unnatural or other ingredients or contaminants that do not conform to the packaging.

126.   Defendant was on notice of this breach, as it was aware of the heavy metals included, or at risk, in the Parent's Choice Baby Foods, and based on the public investigation by Healthy Babies Bright Futures that showed Defendant's baby food products as unhealthy and contaminated.

127.   Privity exists because Defendant impliedly warranted to Plaintiffs and the Class through the warranting, packaging, advertising, marketing, and labeling that Parent's Choice Baby Foods were natural, and suitable for consumption by babies, and by failing to make any mention of heavy metals and/or unnatural or other ingredients.

128.   As a direct and proximate result of Defendant's conduct, Plaintiffs and the Class have suffered actual damages in that they have purchased Walmart Baby Food that is worth less than the price they paid and that they would not have purchased at all had they known of the presence or risk of heavy metals and/or unnatural or other ingredients.

129.   Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendant's failure to deliver goods conforming to their implied warranties and resulting breach.

## THIRD CLAIM FOR RELIEF

### FRAUDULENT MISREPRESENTATION
#### (on behalf of the Class or, alternatively, the State Subclasses)

130.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

131.     Defendant falsely represented to Plaintiffs and the Class that the Parent's Choice Baby Foods are "natural," "organic" and safe for consumption by infants and young children.

132.     Defendant intentionally, knowingly, and recklessly made these misrepresentations to induce Plaintiffs and the Class to purchase Parent's Choice Baby Foods.

133.     Defendant knew that their representations about Parent's Choice Baby Foods were false in that Parent's Choice Baby Foods contained, or were at risk of containing, levels of heavy metals and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements. Defendant allowed its packaging, labels, advertisements, promotional materials, and websites to intentionally mislead consumers, such as Plaintiffs and the Class.

134.     Plaintiffs and the Class did in fact rely on these misrepresentations and purchased Parent's Choice Baby Foods to their detriment. Given the deceptive manner in which Defendant advertised, represented, and otherwise promoted Parent's Choice Baby Foods, Plaintiffs' and the Class's reliance on Defendant's misrepresentations was justifiable.

135.     As a direct and proximate result of Defendant's conduct, Plaintiffs and the Class have suffered actual damages in that they purchased Parent's Choice Baby Foods that were worth less than the price they paid and that they would not have purchased at all had they known of the risk and/or presence of heavy metals and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

136.     Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## FOURTH CLAIM FOR RELIEF

### FRAUD BY OMISSION
#### (on behalf of Class or, alternatively, the State Subclasses)

137.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

138.     Defendant concealed from and failed to disclose to Plaintiffs and the Class that Parent's Choice Baby Foods contained, or were at risk of containing, heavy metals and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

139.     Defendant was under a duty to disclose to Plaintiffs and the Class the true quality, characteristics, ingredients and suitability of the Parent's Choice Baby Foods because: (1) Defendant was in a superior position to know the true state of facts about its products; (2) Defendant was in a superior position to know the actual ingredients, characteristics, and suitability of Parent's Choice Baby Foods for consumption by babies; and (3) Defendant knew that Plaintiffs and the Class could not reasonably have been expected to learn or discover that Parent's Choice Baby Foods were misrepresented in the packaging, labels, advertising, and websites prior to purchasing Parent's Choice Baby Foods.

140.     The facts concealed or not disclosed by Defendant to Plaintiffs and the Class are material in that a reasonable consumer would have considered them important when deciding whether to purchase Parent's Choice Baby Foods.

141.     Plaintiffs and the Class justifiably relied on the Defendant's omissions to their detriment. The detriment is evident from the true quality, characteristics, and ingredients of Parent's Choice Baby Foods, which is inferior when compared to how Parent's Choice Baby Foods are advertised and represented by Defendant.

142.     As a direct and proximate result of Defendant's conduct, Plaintiffs and the Class have suffered actual damages in that they purchased Parent's Choice Baby Foods that were worth less than the price they paid and that they would not have purchased at all had they known of the risk and/or presence of heavy metals and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

143.     Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## FIFTH CLAIM FOR RELIEF

### NEGLIGENT MISREPRESENTATION
**(on behalf of the Class or, alternatively, the State Subclasses)**

144. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

145. Defendant had a duty to Plaintiffs and the Class to exercise reasonable and ordinary care in the formulation, testing, manufacture, marketing, distribution, and sale of Parent's Choice Baby Foods.

146. Defendant breached its duty to Plaintiffs and the Class by formulating, testing, manufacturing, advertising, marketing, distributing, and selling products to Plaintiffs and the Class that do not have the ingredients, qualities, characteristics, and suitability for consumption as advertised by Defendant and by failing to promptly remove Parent's Choice Baby Foods from the marketplace or to take other appropriate remedial action.

147. Defendant knew or should have known that the ingredients, qualities, and characteristics of the Parent's Choice Baby Foods were not as advertised or suitable for their intended use, consumption by infants, and were otherwise not as warranted and represented by Defendant. Specifically, Defendant knew or should have known that: (1) the Parent's Choice Baby Foods were not nutritious, superior quality, pure, natural, healthy and safe for consumption because they contained, or had a risk of containing, levels of heavy metals and/or other unnatural ingredients or contaminants that do not conform to the packaging; (2) the Parent's Choice Baby Foods were adulterated, or at risk of being adulterated, by heavy metals; and (3) the Parent's Choice Baby Foods were otherwise not as warranted and represented by Defendant.

148. As a direct and proximate result of Defendant's conduct, Plaintiffs and the Class have suffered actual damages in that they purchased Parent's Choice Baby Foods that were worth less than the price they paid and that they would not have purchased at all had they known they contained, or were at risk of containing, heavy metals and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

149. Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available.

## SIXTH CLAIM FOR RELIEF

### UNJUST ENRICHMENT
### (on behalf of the Class or, alternatively, the State Subclasses)

150. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

151. Substantial benefits have been conferred on Defendant by Plaintiffs and the Class through the purchase of Parent's Choice Baby Foods. Defendant knowingly and willingly accepted and enjoyed these benefits.

152. Defendant either knew or should have known that the payments rendered by Plaintiffs and the Class were given and received with the expectation that the Parent's Choice Baby Foods would have the qualities, characteristics, ingredients, and suitability for consumption represented and warranted by Defendant. As such, it would be inequitable for Defendant to retain the benefit of the payments under these circumstances.

153. Defendant's acceptance and retention of these benefits under the circumstances alleged herein make it inequitable for Defendant to retain the benefits without payment of the value to Plaintiffs and the Class.

154. Plaintiffs and the Class are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant, plus interest thereon.

155. Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## SEVENTH CLAIM FOR RELIEF

### FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
### Fla. Stat. §§ 501.201 *et seq.*
### (on behalf of Plaintiff Scarola and the Florida Subclass)

156. Plaintiff Scarola incorporates the foregoing allegations as if fully set forth herein.

157. Plaintiff Scarola and the Florida Subclass Members are "consumers," as defined by Fla. Stat. § 501.203(7), the products sold by Defendant Walmart are "goods" within the meaning of FDUTPA, and the transactions at issue constitute "trade or commerce" as defined by FDUTPA.

158. The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.204 provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

159. For the reasons discussed herein, Defendant violated and continues to violate FDUTPA by engaging in the herein described unconscionable, deceptive, unfair acts or practices proscribed by Fla. Stat. § 501.201, *et seq*. Defendant Walmart's acts and practices, including its material omissions, described herein, were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

160. At all times mentioned herein, Defendant Walmart engaged in trade or commerce in Florida, as defined by Fla. Stat. § 501.203(8), in that they advertised, offered for sale, sold or distributed goods or services in Florida and/or engaged in trade or commerce directly or indirectly affecting the people of Florida.

161. Defendant Walmart repeatedly advertised, both on the labels for Parent's Choice Baby Foods Products, on its websites, and through a national advertising campaigns, among other items, that Parent's Choice Baby Foods were and are safe and healthy for infant and child consumption. Defendant Walmart failed to disclose the material information that Parent's Choice Baby Foods contained unsafe levels of toxic heavy metals.

162. Defendant Walmart's representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase Parent's Choice Baby Foods without being aware that Parent's Choice Baby Foods contained unsafe levels of toxic heavy metals. As a direct and proximate result of Defendant's unfair and deceptive acts or practices, Plaintiff Scarola and Florida Subclass Members suffered damages by purchasing Parent's Choice Baby Foods because they would not have purchased Parent's Choice Baby Foods had they known

the truth, and they received a product that was worthless because it contains unsafe levels of toxic heavy metals.

163.    Defendant Walmart's deceptive trade practices caused injury in fact and actual damages to Plaintiff Scarola and Florida Subclass Members in the form of the loss or diminishment of value of Parent's Choice Baby Foods Plaintiff Scarola and Florida Subclass Members purchased, which allowed Defendant to profit at the expense of Plaintiff Scarola and Florida Subclass Members. The injuries Plaintiff Scarola and Florida Subclass Members were to legally protected interests. The gravity of the harm of Defendant Walmart's actions is significant and there is no corresponding benefit to consumers of such conduct.

164.    Plaintiff Scarola and the Florida Subclass Members seek relief for the injuries they have suffered as a result of Defendant Walmart's unfair and deceptive acts and practices, as provided by Fla. Stat. § 501.211 and applicable law.

## EIGHTH CLAIM FOR RELIEF

### GEORGIA FAIR BUSINESS PRACTICES ACT O.C.G.A. §§ 10-1-390 *et seq.*
### (on behalf of Plaintiff Dykes and the Georgia Subclass)

165.    Plaintiff Dykes incorporates the foregoing allegations as if fully set forth herein.

166.    Plaintiff Dykes intends to assert and prosecute claims under the under the Georgia Fair Business Practices Act, O.C.G.A. § 10-1-390 ("GFBPA") against Defendant. Upon information and belief, Defendant does not maintain a place of business in Georgia, nor does Defendant maintain property or assets in Georgia. Plaintiff thus is not required to provide Defendant with pre-suit written demand for relief pursuant to O.C.G.A. § 10-1-399(b). Notwithstanding, to the extent that such statutory notice is deemed required by the Court, Plaintiff Dykes have provided notice in accordance with O.C.G.A. § 10-1-399(b) to Defendant. This Count provides notice that this Complaint shall be amended accordingly to demand all appropriate relief, subject to any response by Defendant.

167.    Plaintiff Dykes and Georgia Subclass Members are "consumers" within the meaning of O.C.G.A. § 10-1-392(6).

168.    Plaintiff Dykes and Georgia Subclass Members' purchases of Parent's Choice Baby Foods are "consumer transactions" within the meaning of O.C.G.A. §10-1-392(10).

169.    At all times mentioned herein, Defendant Walmart engaged in trade or commerce in Georgia, as defined by O.C.G.A. §10-1-392(28), in that they advertised, distributed, offered for sale, sold or distributed goods or services in Georgia and/or engaged in trade or commerce directly or indirectly affecting the people of Georgia.

170.    The Georgia Fair Business Practices Act ("GFBPA"), O.C.G.A. §10-1-393(a) provides that "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce are declared unlawful."

171.    For the reasons discussed herein, Defendant violated and continues to violate the GFBPA by engaging in the herein described unconscionable, deceptive, unfair acts or practices proscribed by O.C.G.A. § 10-1-393 *et seq.* Defendant Walmart's acts and practices, including its material omissions, described herein, were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

172.    Defendant Walmart repeatedly advertised, both on the labels for Parent's Choice Baby Foods Products, on its websites, and through a national advertising campaigns, among other items, that Parent's Choice Baby Foods were and are safe and healthy for infant and child consumption. Defendant Walmart failed to disclose the material information that Parent's Choice Baby Foods contained unsafe levels of toxic heavy metals.

173.    Defendant Walmart's representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase Parent's Choice Baby Foods without being aware that Parent's Choice Baby Foods contained unsafe levels of toxic heavy metals. As a direct and proximate result of Defendant's unfair and deceptive acts or practices, Plaintiff Dykes and Georgia Subclass Members suffered damages by purchasing Parent's Choice Baby Foods because they would not have purchased Parent's Choice Baby Foods had they known the truth, and they received a product that was worthless because it contains unsafe levels of toxic heavy metals.

174.     Defendant Walmart's deceptive trade practices caused injury in fact and actual damages to Plaintiff Dykes and Georgia Subclass Members in the form of the loss or diminishment of value of Parent's Choice Baby Foods Plaintiff Dykes and Georgia Subclass Members purchased, which allowed Defendant to profit at the expense of Plaintiff Dykes and Georgia Subclass Members.

175.     The injuries Plaintiff Dykes and Georgia Subclass Members were to legally protected interests. The gravity of the harm of Defendant Walmart's actions is significant and there is no corresponding benefit to consumers of such conduct.

176.     Plaintiff Dykes and Georgia Subclass Members seek relief for the injuries they have suffered as a result of Defendant Walmart's unfair and deceptive acts and practices, as provided by O.C.G.A § 10-1-399 and applicable law.

## NINTH CLAIM FOR RELIEF

### INDIANA'S DECEPTIVE CONSUMER SALES ACT
### Ind. Code Ann. §§ 24-5-0.5-0.1 *et seq.*
### (on behalf of Plaintiff Schaefer and the Indiana Subclass)

177.     Plaintiff Schafer incorporates the foregoing allegations as if fully set forth herein.

178.     Plaintiff Schaefer intends to assert and prosecute claims under Indiana's Deceptive Consumer Sales Act ("IDCSA"), Ind. Code Ann. § 24-5-0.5-01 *et seq.*, against Defendant. Plaintiff Schaefer intends to provide Defendant written notice of the specific complaint and damages to Defendant in accordance with § 24-5-0.5-5 to Defendant. Subject to the response, if any, by Defendant within 30 days of the notice, Plaintiff, on behalf of herself and the Indiana Subclass, shall amend the Complaint to include this Claim for Relief and demand all appropriate relief under thereunder.

179.     Plaintiff Schaefer and Subclass members are residents of the State of Indiana.

180.     At all times mentioned herein, Defendant Walmart was a "person" as defined under § 24-5-0.5-0.2(2) as well as a "supplier" as defined under § 24-5-0.5-0.2(3) in that they were a "seller," "or other person who engages in or solicits consumer transactions."

181.     At all times mentioned herein, Defendant Walmart engaged in "consumer transactions," as defined by § 24-5-0.5-0.2(1).

182. The IDCSA, § 24-5-0.5-3, provides that "[a] supplier may not commit an unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction. Such an act, omission, or practice by a supplier is a violation of this chapter whether it occurs before, during, or after the transaction. An act, omission, or practice prohibited by this section includes both implicit and explicit misrepresentations."

183. For the reasons discussed herein, Defendant violated and continues to violate the IDCSA by engaging in the herein described unconscionable, deceptive, unfair acts or practices proscribed by § 24-5-0.5-0.1 *et seq.* Defendant Walmart's acts and practices, including its material omissions, described herein, were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

184. Defendant Walmart repeatedly advertised, both on the labels for Parent's Choice Baby Foods Products, on its websites, and through a national advertising campaigns, among other items, that Parent's Choice Baby Foods were and are safe and healthy for infant and child consumption. Defendant Walmart failed to disclose the material information that Parent's Choice Baby Foods contained unsafe levels of toxic heavy metals.

185. Defendant Walmart's representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase Parent's Choice Baby Foods without being aware that Parent's Choice Baby Foods contained unsafe levels of toxic heavy metals. As a direct and proximate result of Defendant's unfair and deceptive acts or practices, Plaintiff Schaefer and the Indiana Subclass Members suffered damages by purchasing Parent's Choice Baby Foods because they would not have purchased Parent's Choice Baby Foods had they known the truth, and they received a product that was worthless because it contains unsafe levels of toxic heavy metals.

186. Defendant Walmart's deceptive trade practices caused injury in fact and actual damages to Plaintiff Schaefer and the Indiana Subclass Members in the form of the loss or diminishment of value of Parent's Choice Baby Foods Plaintiff Schaefer and the Indiana Subclass Members purchased, which allowed Defendant to profit at the expense of Plaintiff Schaefer and

the Indiana Subclass Members. The injuries Plaintiff Schaefer and the Indiana Subclass Members were to legally protected interests. The gravity of the harm of Defendant Walmart's actions is significant and there is no corresponding benefit to consumers of such conduct.

187. Plaintiff Schaefer and the Indiana Subclass Members seek relief for the injuries they have suffered as a result of Defendant Walmart's unfair and deceptive acts and practices, as provided by § 24-5-0.5-4 and applicable law.

188. Defendant had a duty to Plaintiff Schaefer and the Class to exercise reasonable and ordinary care in the formulation, testing, manufacture, marketing, distribution, and sale of Parent's Choice Baby Foods.

189. Defendant breached its duty to Plaintiff Schaefer and the Class by formulating, testing, manufacturing, advertising, marketing, distributing, and selling products to Plaintiff Schaefer and the Class that do not have the ingredients, qualities, characteristics, and suitability for consumption as advertised by Defendant and by failing to promptly remove Parent's Choice Baby Foods from the marketplace or to take other appropriate remedial action.

190. Defendant knew or should have known that the ingredients, qualities, and characteristics of the Parent's Choice Baby Foods were not as advertised or suitable for their intended use, consumption by infants, and were otherwise not as warranted and represented by Defendant. Specifically, Defendant knew or should have known that: (1) the Parent's Choice Baby Foods were not nutritious, superior quality, pure, natural, healthy and safe for consumption because they contained, or had a risk of containing, levels of heavy metals and/or other unnatural ingredients or contaminants that do not conform to the packaging; (2) the Parent's Choice Baby Foods were adulterated, or at risk of being adulterated, by heavy metals; and (3) the Parent's Choice Baby Foods were otherwise not as warranted and represented by Defendant.

220. As a direct and proximate result of Defendant's conduct, Plaintiff Schaefer and the Class have suffered actual damages in that they purchased Parent's Choice Baby Foods that were worth less than the price they paid and that they would not have purchased at all had they known

they contained, or were at risk of containing, heavy metals and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

191. Plaintiff Schaefer and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available.

## TENTH CLAIM FOR RELIEF

### MASSACHUSETTS CONSUMER PROTECTION ACT
**Mass. Gen. Laws Ann. ch. 93, §§ 1 *et seq.***
**(on behalf of Plaintiff Gutierrez and the Massachusetts Subclass)**

192. Plaintiff Gutierrez incorporates the foregoing allegations as if fully set forth herein.

193. Plaintiff Gutierrez intend to assert and prosecute claims under the under the Massachusetts Consumer Protection Law, M.G.L.A. ch. 93A § 1 *et seq.* ("MCPL") against Defendant. Upon information and belief, Defendant does not maintain a place of business in Massachusetts, nor does Defendant maintain property or assets in Massachusetts. Plaintiffs thus are not required to provide Defendant with pre-suit written demand for relief pursuant to M.G.L.A. § 93A § 9(3). Notwithstanding, to the extent that such statutory notice is deemed required by the Court, Plaintiff Gutierrez have provided notice in accordance with M.G.L. ch 93A § 9(3) to Defendant. This Count provides notice that this Complaint shall be amended accordingly to demand all appropriate relief, subject to any response by Defendant.

194. Plaintiff Gutierrez and Massachusetts Subclass Members are residents of the Commonwealth of Massachusetts.

195. Defendant is a "person" as defined by M.G.L.A. 93A § 1(a).

196. Plaintiff Gutierrez are actual or potential consumers of Parent's Choice Baby Foods.

197. Walmart engaged in engaged in deceptive or unfair acts or practices in the in the conduct of any trade or commerce, in violation of M.G.L.A. 93A § 2(a), including but not limited to the following:

a) Knowingly or recklessly made a false representation as to the characteristics and use of Parent's Choice Baby Foods, in violation of 93A § 2(a);

b) Represented that Parent's Choice Baby Foods are healthy, natural, and safe for consumption, in violation of 93A § 2(a);

c) Advertised Parent's Choice Baby Foods with an intent not to sell it as advertised, in violation of 93A § 2(a); and

d) Failed to disclose the material information that Parent's Choice Baby Foods contained unsafe levels of toxic heavy metals, in violation of 93A § 2(a).

198.    As detailed, *infra,* Defendant Walmart's deceptive trade practices significantly impacted the public, because there are millions of consumers of Parent's Choice Baby Foods, including Plaintiff Gutierrez and Massachusetts Subclass Members.

199.    Defendant Walmart's representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase Parent's Choice Baby Foods without being aware that Parent's Choice Baby Foods contained unsafe levels of toxic heavy metals. As a direct and proximate result of Defendant's unfair and deceptive acts or practices, Plaintiff Gutierrez and members of the Class suffered damages by purchasing Parent's Choice Baby Foods because they would not have purchased Parent's Choice Baby Foods had they known the truth, and they received a product that was worthless because it contains unsafe levels of toxic heavy metals.

200.    Defendant's deceptive trade practices caused injury in fact and actual damages to Plaintiff Gutierrez and Massachusetts Subclass Members in the form of the loss or diminishment of value of Parent's Choice Baby Foods Plaintiff Gutierrez and Massachusetts Subclass Members purchased, which allowed Defendant to profit at the expense of Plaintiff Gutierrez and Massachusetts Subclass Members. The injuries to Plaintiff Gutierrez and Massachusetts Subclass Members were to legally protected interests. The gravity of the harm of Defendant's actions is significant and there is no corresponding benefit to consumers of such conduct.

201.    Plaintiff Gutierrez and Massachusetts Class Members seek relief under 93A § 9 including, not limited to, compensatory damages, statutory damages, restitution, penalties, injunctive relief, and/or attorneys' fees and costs.

## ELEVENTH CLAIM FOR RELIEF

### MISSOURI MERCHANDISING PRACTICES ACT
### Mo. Rev. Stat. §§ 407 *et seq.*
### (on behalf of Plaintiff Harrison and the Missouri Subclass)

202.  Plaintiff Harrison incorporates the foregoing allegations as if fully set forth herein.

203.  Plaintiff Harrison and Missouri Subclass members are residents of the State of Missouri.

204.  At all times mentioned herein, Defendant Walmart engaged in "trade" or "commerce" in Missouri, as defined by Mo. Rev. Stat. § 407.010(7), in that they advertised, offered for sale, and sold goods, property, or services primarily for personal, family, or household purposes, and advertised, solicited, offered for sale, and sold "services", "property", "article[s]", "commodit[ies]" or "thing[s] of value" in Missouri.

205.  Plaintiff Harrison and Missouri Subclass members purchased Parent's Choice Baby Foods "primarily for personal, family or household purposes." Mo. Rev. Stat. § 407.025(1).

206.  The Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. § 407.020 provides that "[t]he act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce...in the state of Missouri, is declared to be an unlawful practice."

207.  For the reasons discussed herein, Defendant violated and continues to violate the MMPA by engaging in the herein described unconscionable, deceptive, unfair acts or practices proscribed by Mo. Rev. Stat. § 407.020 *et seq.* Defendant Walmart's acts and practices, including its material omissions, described herein, were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

208.  Defendant Walmart repeatedly advertised, both on the labels for Parent's Choice Baby Foods Products, on its websites, and through a national advertising campaigns, among other items, that Parent's Choice Baby Foods were and are safe and healthy for infant and child

42

consumption. Defendant Walmart failed to disclose the material information that Parent's Choice Baby Foods contained unsafe levels of toxic heavy metals.

209.   Defendant Walmart's representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase Parent's Choice Baby Foods without being aware that Parent's Choice Baby Foods contained unsafe levels of toxic heavy metals. As a direct and proximate result of Defendant's unfair and deceptive acts or practices, Plaintiff Harrison and Missouri Subclass Members suffered damages by purchasing Parent's Choice Baby Foods because they would not have purchased Parent's Choice Baby Foods had they known the truth, and they received a product that was worthless because it contains unsafe levels of toxic heavy metals.

210.   Defendant Walmart's deceptive trade practices caused injury in fact and actual damages to Plaintiff Harrison and Missouri Subclass Members in the form of the loss or diminishment of value of Parent's Choice Baby Foods Plaintiff Harrison and Missouri Subclass Members purchased, which allowed Defendant to profit at the expense of Plaintiff Harrison and Missouri Subclass Members. The injuries Plaintiff Harrison and Missouri Subclass Members were to legally protected interests. The gravity of the harm of Defendant Walmart's actions is significant and there is no corresponding benefit to consumers of such conduct.

211.   Plaintiff Harrison and Missouri Subclass Members seek relief for the injuries they have suffered as a result of Defendant Walmart's unfair and deceptive acts and practices, as provided by Mo. Rev. Stat. § 407.025 and applicable law.

## TWELTH CLAIM FOR RELIEF

### PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW
### 73 Pa. Cons. Stat. Ann. §§ 201-1 *et seq.*
### (on behalf of Plaintiff Grossi and the Pennsylvania Subclass)

212.   Plaintiff Grossi incorporates the foregoing allegations as if fully set forth herein.

213.   Plaintiff Grossi and Pennsylvania Subclass Members are residents of the Commonwealth of Pennsylvania.

214. At all times mentioned herein, Defendant Walmart engaged in "trade" or "commerce" in Pennsylvania, as defined by 73 Pa. Cons. Stat. Ann. § 201-2(3), in that they advertised, offered for sale, and sold goods, property, or services primarily for personal, family, or household purposes, and advertised, solicited, offered for sale, and sold "services", "property", "article[s]", "commodit[ies]" or "thing[s] of value" in Pennsylvania.

215. Plaintiff Grossi and Pennsylvania Subclass members purchased Parent's Choice Baby Foods "primarily for personal, family or household purposes." 73 Pa. Const. Stat. Ann. § 201-9.2.

216. Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTCPL"), 73 Pa. Cons. Stat. Ann. § 201-3 provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . are hereby declared unlawful."

217. For the reasons discussed herein, Defendant violated and continues to violate the UTCPL by engaging in the herein described unconscionable, deceptive, unfair acts or practices proscribed by UTCPL §§ 201-1 *et seq.* Defendant Walmart's acts and practices, including its material omissions, described herein, were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

218. Defendant Walmart repeatedly advertised, both on the labels for Parent's Choice Baby Foods Products, on its websites, and through a national advertising campaigns, among other items, that Parent's Choice Baby Foods were and are safe and healthy for infant and child consumption. Defendant Walmart failed to disclose the material information that Parent's Choice Baby Foods contained unsafe levels of toxic heavy metals.

219. Defendant Walmart's representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase Parent's Choice Baby Foods without being aware that Parent's Choice Baby Foods contained unsafe levels of toxic heavy metals. As a direct and proximate result of Defendant's unfair and deceptive acts or practices, Plaintiff Grossi and Pennsylvania Subclass Members suffered damages by purchasing Parent's

Choice Baby Foods because they would not have purchased Parent's Choice Baby Foods had they known the truth, and they received a product that was worthless because it contains unsafe levels of toxic heavy metals.

220.  Defendant Walmart's deceptive trade practices caused injury in fact and actual damages to Plaintiff Grossi and Pennsylvania Subclass Members in the form of the loss or diminishment of value of Parent's Choice Baby Foods Plaintiff Grossi and Pennsylvania Subclass Members purchased, which allowed Defendant to profit at the expense of Plaintiff Grossi and Pennsylvania Subclass Members. The injuries Plaintiff Grossi and Pennsylvania Subclass Members were to legally protected interests. The gravity of the harm of Defendant Walmart's actions is significant and there is no corresponding benefit to consumers of such conduct.

221.  Plaintiff Grossi and Pennsylvania Subclass Members seek relief for the injuries they have suffered as a result of Defendant Walmart's unfair and deceptive acts and practices, as provided by 73 Pa. Cons. Stat. Ann. § 201-9.2 and applicable law.

### THIRTEENTH CLAIM FOR RELIEF

#### NEW YORK GENERAL BUSINESS LAW,
#### N.Y. Gen. Bus. Law § 349
#### (on behalf of Plaintiff DiNovi and the New York Subclass)

222.  Plaintiff DiNovi incorporates the foregoing allegations as if fully set forth herein.

223.  Plaintiff DiNovi brings this claim individually and on behalf of the members of the proposed New York Subclass.

224.  New York General Business Law ("GBL") § 349 declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce . . ." GBL § 349(a).

225.  The practices alleged herein – namely, Defendant's use of deception, fraud, false pretenses, and omissions of material fact in connection with its failure to disclose to Plaintiff DiNovi and the New York Subclass that Parent's Choice Baby Foods contained, or were at risk of containing, heavy metals and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements – are unfair, deceptive, and misleading in violation of GBL § 349.

226. Because these practices pertain to the Parent's Choice Baby Foods' central functionality, i.e., the presence or potential presence of toxic heavy metals in food created for babies, these failures reflect material facts, and Defendant was obligated to disclose these material facts to Plaintiff DiNovi and members of the New York Subclass. A reasonable consumer attaches importance to such material facts and are induced to act thereon in making purchasing decisions. Because Defendant failed to disclose these material facts, consumers were misled.

227. At all relevant times, Defendant had exclusive knowledge that the Parent's Choice Baby Foods contained, or were at risk of containing, heavy metals and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements. Defendant further knew or reasonably should have known that there was no disclosure on the Parent's Choice Baby Foods' packaging, or at the point of sale, that the products contained, or were at risk of containing, heavy metals and/or unnatural or other ingredients.

228. At all relevant times, Defendant knew or reasonably should have known that Plaintiff DiNovi and other members of the New York Subclass relied on the foregoing omissions and will continue to be deceived and harmed by Defendant's foregoing unfair practices.

229. The foregoing deceptive acts and practices were directed at Plaintiff DiNovi and other members of the New York Subclass.

230. Plaintiff DiNovi and members of the New York Subclass have been injured as a direct and proximate result of Defendant's violations described above as they would not have purchased them at all had they known that of these aforementioned presence, or potential presence, of toxic heavy metals.

231. As a result of Defendant's unlawful action, Plaintiff DiNovi and members of the New York Subclass seek to enjoin Defendant's deceptive and unlawful acts and practices described herein to recover actual damages, fifty dollars or both, whichever is greater, as well as treble damages, reasonable attorneys' fees, and all other remedies this Court deems proper.

# FOURTEENTH CLAIM FOR RELIEF

## NEW YORK GENERAL BUSINESS LAW,
### N.Y. Gen. Bus. Law § 350
### (on behalf of Plaintiff DiNovi and the New York Subclass)

232.    Plaintiff DiNovi incorporates the foregoing allegations as if fully set forth herein.

233.    Plaintiff DiNovi brings this claim individually and on behalf of the members of the proposed New York Subclass.

234.    In turn, GBL § 350 (emphasis added) defines false advertising as:

> "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising *fails to reveal facts material in the light of such representations with respect to the commodity* . . . to which the advertising relates under the conditions prescribed in said advertisement, or under such conditions as are customary or usual."

235.    The practices alleged herein – namely, Defendant's use of deception, fraud, false pretenses, and omissions of material fact in connection with its failure to disclose to Plaintiff DiNovi and the New York Subclass that Parent's Choice Baby Foods contained, or were at risk of containing, heavy metals and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements – fail to reveal material facts in respect to the Parent's Choice Baby Foods, and therefore violate GBL § 350.

236.    Because these practices pertain to the Parent's Choice Baby Foods' central functionality, i.e., the presence or potential presence of toxic heavy metals in food created for babies, these failures reflect material facts, and Defendant was obligated to disclose these material facts to Plaintiff DiNovi and members of the New York Subclass. A reasonable consumer attaches importance to such material facts and are induced to act thereon in making purchasing decisions. Because Defendant failed to disclose these material facts, consumers were misled.

237.    At all relevant times, Defendant knew or reasonably should have known that Plaintiff DiNovi and other members of the New York Subclass relied on the foregoing omissions and will continue to be deceived and harmed by Defendant's foregoing unfair practices.

238.    At all relevant times, Defendant knew or reasonably should have known that Plaintiff DiNovi and other members of the New York Subclass relied on the foregoing omissions and will continue to be deceived and harmed by Defendant's foregoing unfair practices.

239.    The foregoing deceptive acts and practices were directed at Plaintiff DiNovi and other members of the New York Subclass and have resulted in consumer injury or harm to the New York public.

240.    Plaintiff DiNovi and members of the New York Subclass have been injured as a direct and proximate result of Defendant's violations described above as they would not have purchased them at all had they known that of these aforementioned presence, or potential presence, of toxic heavy metals.

241.    As a result of Defendant's unlawful action, Plaintiff DiNovi and members of the New York Sublass seek to enjoin Defendant's misleading and unlawful acts and practices described herein, to recover actual damages or five hundred dollars per violation, whichever is greater (or both), as well as treble damages, reasonable attorneys' fees, and all other remedies this Court deems proper.

## FIFTEENTH CLAIM FOR RELIEF

### ARKANSAS DECEPTIVE TRADE PRACTICES ACT,
A.C.A. §§ 4-88-101, *et seq.*
**(on behalf of Plaintiffs Neal and Coleman and the Arkansas Subclass)**

242.    Plaintiffs Neal and Coleman incorporate the foregoing allegations as if fully set forth herein.

243.    Plaintiffs Neal and Coleman bring this claim individually and on behalf of the members of the proposed Arkansas Subclass.

244.    Defendant is a "person" as defined by A.C.A. § 4-88-102(5).

245.    Defendant's products are "goods" as defined by A.C.A. §§ 4-88-102(4).

246. Defendant advertised, offered, or sold in Arkansas and engaged in trade or commerce directly or indirectly affecting the people of Arkansas.

247. The Arkansas Deceptive Trade Practices Act ("ADTPA"), A.C.A. §§ 4-88-101, *et seq.*, prohibits unfair, deceptive, false, and unconscionable trade practices.

248. Defendant's conduct described herein constitutes deceptive, unfair and unconscionable trade practices as defined by §§ 4-88-107 and 4-88-108, A.C.A., including but not limited to Defendant's omissions of material facts regarding the Parent's Choice Baby Foods, with the intent that others rely upon the concealment, omission and suppression of, and engaging in immoral, unethical, oppressive and unscrupulous activities that are substantially injurious to consumers.

249. Defendant's omissions are material to consumers because they relate to the quality of the ingredients and composition of the Parent's Choice Baby Foods, including whether the products were and are safe and healthy for infant and child consumption. Thus, Defendant was obligated to disclose these material facts to Plaintiffs Neal and Coleman and members of the Arkansas Subclass. Because Defendant failed to disclose these material facts, consumers were misled. At all relevant times, Defendant knew or reasonably should have known that there was no disclosure at the point of sale that the Parent's Choice Baby Foods contained unsafe levels of toxic heavy metals.

250. Defendant held itself out to be an expert in baby food, and consumers trusted Defendant with manufacturing food for their children, whose bodies are more sensitive than those of adults. Defendant accepted the responsibility of manufacturing foods for children while keeping the inadequate quality of its ingredients secret from the public. Accordingly, because Defendant held itself out as having a special role in the manufacturing of baby food with a corresponding duty of trustworthiness and care, Plaintiffs Neal and Coleman and Arkansas Subclass members acted reasonably in relying on Defendant's misrepresentations and omissions, the truth of which they could not have discovered.

251.    Defendant violated and continues to violate the ADTPA and similar laws in other

states by engaging in the following deceptive, unfair and unconscionable acts and practices,

including, but not limited to those proscribed by the following subsections of A.C.A. §§ 4-88-107

and 4-88-108:

> A.C.A. § 4-88-107(a) - Deceptive and unconscionable trade practices made
> unlawful and prohibited by this chapter include, but are not limited to, the
> following:
>> (1) Knowingly making a false representation as to the characteristics,
>> ingredients, uses, benefits, alterations, source, sponsorship, approval, or
>> certification of goods or services or as to whether goods are original or
>> new or of a particular standard, quality, grade, style, or model;
>> (2) Advertising the goods or services with the intent not to sell them as
>> advertised;
>> (8)(B) Knowingly taking advantage of a consumer who is reasonably
>> unable to protect his or her interest because of ignorance;
>> (10): "engaging in any other unconscionable, false, or deceptive act or
>> practice in business, commerce or trade"; and
>
> A.C.A. § 4-88-108 - When utilized in connection with the sale or advertisement
> of any goods, services, or charitable solicitation, the following shall be unlawful:
>> (1) The act, use or employment by any person of any deception, fraud,
>> or false pretense; or
>> (2) The concealment, suppression, or omission of any material fact with
>> intent that others rely upon the concealment, suppression, or omission.

252.    As the entity responsible for manufacturing the Parent's Choice Baby Foods,

Defendant knew or reasonably should have known that the Parent's Choice Baby Foods contained

unsafe levels of toxic heavy metals. Nonetheless, Defendant failed to disclose these facts to

consumers at the point of sale.

253.    At all relevant times, Defendant knew or reasonably should have known that there

was no disclosure at the point of sale that the Parent's Choice Baby Foods contained unsafe levels

of toxic heavy metals.

254.    Defendant intended to mislead Plaintiffs Neal and Coleman and Arkansas Subclass

members and induce them to rely on its misrepresentations and omissions.

255.    Defendant acted intentionally, knowingly, and maliciously to violate Arkansas's

Deceptive Trade Practices Act, and recklessly disregarded Plaintiffs Coleman and Neal's and

Arkansas Subclass members' rights.

256.    At all relevant times, Defendant knew or reasonably should have known that Plaintiffs Neal and Coleman and other members of the Arkansas Subclass relied on the foregoing omissions and will continue to be deceived and harmed by Defendant's foregoing unfair practices.

257.    Plaintiffs Neal and Coleman and members of the Arkansas Subclass reasonably and justifiably relied on Defendant's fraudulent omissions regarding the Parent's Choice Baby Foods. Plaintiffs Neal and Coleman and other consumers did not know, and had no reason to know, at the point of sale that Parent's Choice Baby Foods contained unsafe levels of toxic heavy metals.

258.    Plaintiffs Neal and Coleman and the Arkansas Subclass reserve the right to allege other violations of DTPA as Defendant's conduct is ongoing.

259.    Plaintiffs Neal and Coleman and the Arkansas Subclass suffered injuries caused by Defendant because they would not have purchased the Parent's Choice Baby Foods had they known that Defendant's conduct was misleading and fraudulent.

260.    As a direct and proximate result of the unconscionable, unfair, and deceptive acts and practices alleged herein, Plaintiffs Neal and Coleman and the Arkansas Subclass have been damaged and are entitled to recover actual damages to the extent permitted by law, in an amount to be proven at trial. In addition, Plaintiffs Neal and Coleman and the Arkansas Subclass seek equitable relief to enjoin Defendant from continuing these deceptive acts and practices.

261.    Pursuant to § 4-88-113, A.C.A., Plaintiffs Neal and Coleman and the Arkansas Subclass are entitled to attorneys' fees.

## SIXTEENTH CLAIM FOR RELIEF

### Declaratory Judgment Act
### (on behalf of the Class and State Subclasses)

262.    Plaintiffs restates and realleges all proceeding allegations above as if fully set forth herein.

263.    Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, et seq., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant

further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal and state statutes described in this Complaint.

264.    An actual controversy has arisen in the wake of the disclosure that Walmart's Baby Foods contain toxic heavy metals and other undesirable toxins and contaminants. Walmart represented in its marketing and labeling of its Baby Food products that such products were "organic", "natural", "great for you" and "GMO free" and utilize the U.S.D.A. organic logo to emphasize the foods' suitability for consumption by young children and infants. Moreover, Walmart purposefully induced reasonable consumers to rely on its marketing, all of which explicitly and implicitly convey that its baby food products are fit for consumption by infants and children. Testing of Parent's Choice Baby Foods has identified that a number of these products contain excessive levels of heavy metals—arsenic, lead, cadmium, and mercury. Plaintiffs believe that Walmart's Baby Food products continue to contain excessive levels of toxic heavy metals. Walmart denies these allegations. Plaintiffs remain at imminent risk that Walmart Baby Food products will continue to contain excessive levels of toxic heavy metals.

265.    Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

266.    Walmart owes a legal duty to sell Baby Food Products that are free of heavy metals and neurotoxins as reasonable consumers do not want to expose their children to substances and/or chemicals that would either harm the child or inhibit the child's development.

267.    Walmart representations on in its marketing and labeling of its Baby Food products that such products were "organic", "natural", "great for you" and "GMO free" and utilize the U.S.D.A. organic logo are unfair, deceptive and fraudulent and violate various state statutes and common law; and

268.    Walmart continues to breach their legal duties by failing to ensure that their Baby Food products are safe for consumption by children and free of toxic heavy metals.

269. This Court also should issue corresponding prospective injunctive relief requiring Walmart to employ certain measures and protocols consistent with law to ensure that its products do not contain harmful toxic heavy metals.

270. If an injunction is not issued, Plaintiffs will suffer irreparable injury, and lack an adequate legal remedy, as Walmart continues to sell such Baby Food Products and Plaintiffs will not be able to determine if such Baby Food Products are safe for their children's consumption. The risk of future harm is real, immediate, and substantial. If Walmart's Baby Food products continue to contain undisclosed harmful toxic heavy metals, Plaintiffs will not have an adequate remedy at law because many of the resulting injuries are not readily quantified and they will be forced to bring multiple lawsuits to rectify the same conduct.

271. The hardship to Plaintiffs if an injunction does not issue exceeds the hardship to Walmart if an injunction is issued. Plaintiffs will likely be subjected to substantial future harm. On the other hand, the cost to Walmart of complying with an injunction to ensure that its Baby Food Products are safe and free from harmful toxic heavy metals is relatively minimal, and Walmart has a pre-existing legal obligation to employ measures to ensure the safety of its products.

272. Issuance of the requested injunction will not disserve the public interest. To the contract, such an injunction would benefit the public by preventing another future harm from products that contain harmful toxic heavy metals, thus eliminating the additional injuries that would result to Plaintiffs, the Class and Subclasses.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the Class and Subclass Members, respectfully request that the Court enter an Order:

i. Declaring that this action is a proper class action, certifying the Classes and/or Subclasses as requested herein, designating Plaintiffs as Class Representatives, and appointing Plaintiffs' attorneys as Class Counsel;

ii. Enjoining Defendant from continuing the unfair business practices alleged in this Complaint;

iii.    Ordering Defendant to pay actual and statutory damages (including punitive damages) and restitution to Plaintiffs the Class and Subclass Members, as allowable by law;

iv.    Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded;

v.    Ordering Defendant to pay Plaintiffs' counsel reasonable attorneys' fees and costs of suit; and

vi.    Ordering such other and further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs, on behalf of themselves and all others similarly situated, hereby demand a jury trial for all claims so triable.

DATED: June 23, 2021

Hank Bates (ABN 98063)
Tiffany Wyatt Oldham (ABN 2001287)
CARNEY BATES & PULLIAM, PLLC
519 W. 7th Street
Little Rock, AR 72201
Telephone: (888) 551-9944
Facsimile: (501) 312-8500
hbates@cbplaw.com
toldham@cbplaw.com

Steven L. Bloch (*pro hac vice* forthcoming)
Ian W. Sloss (*pro hac vice* forthcoming)
Zachary Rynar (*pro hac vice* forthcoming)
**SILVER GOLUB & TEITELL LLP**
184 Atlantic Street
Stamford, CT 06901
Telephone: (203) 325-4491
Facsimile: (203) 325-3769
sbloch@sgtlaw.com
isloss@sgtlaw.com
zrynar@sgtlaw.com

Joseph P. Guglielmo (*pro hac vice* forthcoming)
Erin G. Comite (*pro hac vice* forthcoming)
Sean T. Masson (*pro hac vice* forthcoming)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169

Telephone: (212) 223-6444
Facsimile: (212) 223-6334
jguglielmo@scott-scott.com
ecomite@scott-scott.com
smasson@scott-scott.com

Timothy J. Peter (*pro hac vice* forthcoming)
**FARUQI & FARUQI, LLP**
1617 JFK Boulevard, Ste. 1550
Philadelphia, PA 19103
Telephone: (215) 277-5770
Facsimile: (215) 277-5771
tpeter@faruqilaw.com

*Attorneys for Plaintiffs*